# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRETT T. CULVER,** | : | CIVIL NO. 1:CV-11-2205 |
| Plaintiff, | : | |
| | : | **(Chief Judge Kane)** |
| v. | : | |
| | : | |
| **JAMES SPECTER, et al.,** | : | |
| Defendants | : | |

## MEMORANDUM

This civil rights action was filed by Brett T. Culver ("Culver") pursuant to 42 U.S.C. § 1983. In the complaint, Culver alleges that employees at SCI-Mahanoy failed to protect him from an assault by another inmate after they informed the inmate that Culver had made complaints about him. He further maintains that he was denied adequate medical care in violation of the Eighth Amendment with respect to the injuries sustained from the assault. State medical negligence claims are also asserted. Presently before the Court are motions to dismiss the complaint filed by the Corrections Defendants (Doc. No. 32) and the Medical Service Provider Defendant (Doc. No. 44).

**I.     Allegations in the Complaint**

Culver claims that on December 3, 2009, while confined at SCI-Mahanoy, Unit Manager Muick and Counselor Marhelko failed to protect him from an assault by another inmate when they informed said inmate that Culver had made complaints against him. By doing so, Culver claims that Defendants deliberately disregarded his safety by inciting hostility toward him that resulted in the attack. As a result, Culver suffered a broken jaw. Following the assault, Culver states he was denied adequate medical care with respect to his injury. When he reported to the prison medical department he was seen by Defendant Moczulski, the prison dentist, and referred

to Defendant Specter, a private practice oral surgeon contracted by the Pennsylvania Department of Corrections to provide services to SCI-Mahanoy.[1] Specter admitted Culver to the Wilkes-Barre General Hospital the same day, and performed surgery on him on December 4, 2009. Culver raises claims with respect to the treatment provided by Specter. Specifically, he alleges that Specter failed to detect and repair all the jawbone breaks that had occurred, causing permanent damage and disfigurement. Culver was returned to SCI-Mahanoy the same day.

Once back at the prison, Culver alleges that the SCI-Mahanoy Medical Department Defendants disregarded his complaints about the pain he was experiencing and his visible need for medical attention. This behavior continued for several weeks until he was returned to see Specter. Culver further maintains that although the Medical Department prescribed a pureed diet due to his wired jaw, Defendant Stanitis as manager of Food Services failed to provide this diet. As a result, Culver claims he lost weight and was denied proper nutrition. A grievance filed with respect to these issues (Grievance #30081) was denied on all levels.

On January 7, 2010, Culver was taken back to see Specter. He raises Eighth Amendment and state negligence claims against him for removing the wires and anchors in his jaw and advising him that his treatment was complete without performing x-rays after Culver complained that pain and fractures still existed.

When returned to SCI-Mahanoy, Culver complained to the SCI-Mahanoy Defendants of excruciating pain and a jaw that was visibly still broken, but his complaints were disregarded. He alleges that he was removed from the pureed diet and placed back in general population. The

---

[1] A motion to dismiss filed by Specter was granted in part and denied in part by the Court on August 15, 2012 (Doc. No. 81).

following day he attended sick call and voiced the same complaints, but again received no response. He attended sick call on January 12, 2010, and was also disregarded. On January 13, 2010, Culver went to the Medical/Dental Department and requested x-rays. At this time he states that Defendants confirmed that he had unrepaired, existing fractures. Although he was admitted to the prison infirmary and prescribed a pureed diet, Culver claims that he was not provided any medical attention for his injuries and was denied properly prepared food by Defendant Stanitis. On January 14, 2010, he filed a grievance against Stanitis (#304494).

On January 26, 2010, Culver was visited by Stanitis and Alice Chipriano, the Medical Department Health Care Administrator, in response to the grievance he filed. Defendants agreed to remedy the food problem if Culver signed off on the grievance he had submitted. Although Culver agreed to do so, he claims that Defendants reneged on their promise the following day. As a result, Culver filed grievance #305153 against Stanitis and the Medical Department with respect to the lack of proper food and medical treatment. It was denied on all levels.

On January 28, 2010, Culver was taken back to see Defendant Specter who again disregarded his complaints about his pain and the disrepair of his injury. Although Specter stated that no unrepaired fractures existed, he then proceeded to perform a second surgical procedure on Culver. Culver alleges that the existing fractures still were not repaired, and that Specter inserted more wiring and anchoring devices, all causing him intense pain and permanent damage to his jaw.

When Culver returned to SCI-Mahanoy the same day, he complained to the prison medical personnel of the pain and improper treatment, but was again disregarded and received no medical care. On February 3, 2010, Culver pleaded with Dr. Lisiak for medical intervention and referral to

3

a sports injury specialist, but he was ignored. He further complained of malnutrition and weight loss due to the prison's failure to provide him with a pureed diet. Another grievance (#306746) was submitted on this date. It was denied on all levels of appeal.

On February 8, 2010, Culver complained to Dr. Gustitus in the SCI-Mahanoy Medical Department, but his pleas for medical intervention were disregarded. Another complaint was also submitted to Stanitis, but Culver claims he still failed to receive properly prepared food. A grievance was filed by Culver (#307426) challenging the denial of his request to have photographs taken of his condition. The grievance was denied on all levels.

On February 16, 2010, Culver was taken back to see Specter. His complaints of incorrect procedures, problems and pain were again disregarded. A complaint was also submitted to Defendant Moczulski on this date requesting that photos be taken of the improper work performed by Specter and his condition, but Moczulski refused to do so and denied Culver any medical attention. Complaints were again made to Moczulski on February 19, 2010, with no response. SCI-Mahanoy Defendants forced Culver to see Specter again on March 5, 2010, who again ignored his complaints of excruciating pain. Also on this date, Specter performed a tightening of wires procedure which caused further pain and pulled Culver's teeth out of place. When Culver was returned to the prison, medical personnel there continued to deny him any medical relief.

On March 7, 2010, Culver reported to the medical staff complaining of pain and broken wires, but was denied any relief. The following day, he reported to Defendant Moczulski who ignored requests for x-rays and intervention. Culver was taken back to see Specter on March 9, 2010, where Specter insisted Culver's teeth would realign once the installed devices were removed. While the wires securing his jaw were removed, the devices anchored to his tooth roots

4

were left in place, causing Culver further pain. Culver was told to return on March 23, 2010 for the removal of these devices.

Following his return to SCI-Mahanoy, Culver again notified the dental department on March 12, 2012 about the improper procedures performed on him several days earlier by Specter and requested medical intervention. Defendant Moczulski disregarded his pleas. A further complaint of pain and request for proper medical treatment was made to Dr. Lisiak on March 12, 2010, but refused.

On March 23, 2010, Culver was returned to see Specter. Specter did not remove the anchored installments as previously promised. Rather, he rewired Culver's jaw back together in the same incorrect fashion as he had done previously, causing him extreme pain. Following Culver's return to the prison, all pleas for medical intervention were denied. He again notified Dr. Lisiak of everything that had occurred, but Lisiak failed to take any action. On or between March 26, 2010 and March 29, 2010, Culver states that he documented the history of his jaw problems and provided the same to the prison Dental Department, prison medical administration and Dr. Lisiak, but no responsive action was taken. Although he was permitted to speak with Lisiak on April 1, 2010, Lisiak disregarded what he told him. On April 7, 2010, Culver provided the same documentation to the prison Medical Department, Defendant Chipriano and the prison administrators, but no action was taken.

On April 15, 2010, Culver alleges he was again subjected to Defendant Specter who ripped out the wires anchored to his tooth roots without providing any sedation. Specter then informed him that his jaw and teeth were in perfect alignment, and that his treatment was over. Upon his return to the prison facility, Lisiak disregarded Culver's complaints and discharged him

5

from the medical infirmary back into general population despite his disfigurement, extreme pain, eating complications and speech impairment.

On April 20, 2010, Culver reported his condition to Defendant Moczulski in the prison medical/dental department. Moczulski scheduled an appointment for Culver with a maxillofacial surgeon.[2] The following day, Culver again reported to the medical department complaining of unbearable pain, the need for a soft diet, and corrective care. He claims that medical action was denied. On April 27, 2010, Culver filed grievance #316406 seeking relief due to damage caused to his bridge fixture and front teeth. The grievance was denied through all levels of appeal.

On June 25, 2010, Culver states that instead of providing him with corrective medical action with respect to his damaged jaw and teeth, Defendant Moczulski filed down the entire right side of his teeth. He claims that this ruined any possibility that his teeth could be restored/corrected in the future. Another grievance complaining about inadequate medical care was filed by Culver (#332205), but rejected on all levels.

Between January and September of 2011, Culver reported to sick call on a number of occasions. He contends that he was not permitted to discuss anything related to his jaw treatment on these visits. On January 29, 2011, he submitted a request slip to sick call for treatment, but it was denied. In April of 2011, he states that the RN Assistants prescribed minimal pain relief medication for him. On May 16, 2011, RN Assistant Tony refused to allow him to complain about his jaw condition/injuries and related pain, and denied him medical care. On August 4, 2011, he claims that when he attended sick call and attempted to report conditions of pain, the medical staff started retaliating against him by charging his account for sick call visitation and for

---

[2] He was seen by the surgeon on May 31, 2010.

the renewal of prescriptions for the minimal pain relief medication provided.

On August 14, 2011, Culver submitted grievances #377838 with respect to the medical staff's refusal to allow him to voice complaints about his jaw condition. The grievance was denied on all levels. On August 22, 2011, an RN Assistant prescribed Nurotine for Culver's pain that Culver claims was low level and ineffective. Grievance #382495 was submitted on September 22, 2011, and denied on all levels.

## II.     Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the ... claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1947, 173 L. Ed. 2d 868 (2009)). Next, the factual and legal elements

of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. at 1950, 173 L. Ed. 2d 868 (citing Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 662, 129 S. Ct. at 1949, 173 L. Ed. 2d 868. When the complaint fails to present a prima facie case of liability, however, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

### III. Discussion

#### A. Corrections Defendants' Motion to Dismiss

Corrections Defendants seek the dismissal of the complaint on the basis that: (1) they were not deliberately indifferent to Culver's dental and/or medical needs; (2) he fails to state a failure to protect claim; (3) there is no liability for their handling of Culver's grievances and appeals; and (4) no certificate of merit was filed in support of the medical and/or dental malpractice claims as required under state law. The Court will address each of these arguments in turn.

##### 1. Deliberate Indifference to Dental/Medical Needs

To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that defendants acted "with

8

deliberate indifference to his or her serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). There are two components to this standard: First, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. Additionally, the plaintiff must make a "subjective" showing that the defendant acted with "a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002). In this context, deliberate indifference has been defined as more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, when the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004)(quoting White v. Napoleon, 897 F.2d 103, 109 (1990); Monmouth County Corr. Inst. Inmates v. Lensario, 834 F.2d 326, 346 (3d Cir. 1987). A prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference, and "mere disagreements over medical judgment do not state Eighth Amendment claims." White, 897 F.2d at 110. "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)(internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved

9

is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White , 897 F.3d at 110.

In applying these principles to the instant case, the Court finds that while deliberate indifference cannot be found on Defendant Moczulski's part to the extent that he did initially refer Culver to Dr. Specter, and later to a maxillofacial surgeon for his jaw, the case must be permitted to proceed against him at this juncture as to other claims raised against him. Although Culver may have been seen in the prison medical department numerous times, taking Culver's allegations in the compliant as true, he claims that he suffered from excruciating pain and was denied pain medication/medical attention following his return to the prison on many of these occasions. While his disagreement with the type or dosage of medication he may have been provided on certain occasions fails to state a claim, the denial of pain medication and failure to provide any medical treatment does set forth a viable Eighth Amendment claim.[3] Without passing judgment as to the ultimate success of these claims, the Court must at least permit Culver to support these allegations through discovery.

The motion to dismiss will also be denied at this juncture with respect to Defendant Cerullo, the prison's Health Care Administrator. It is unclear at this juncture as to the extent of the authority conferred upon Cerullo by virtue of her supervisory position within the SCI-Mahanoy Medical Department. It is presently unknown as to whether this Defendant was vested with the authority or required to approve or override recommendations, especially requests for specific medications or courses of treatment made by the physicians or to otherwise intervene in

---

[3] The Court does agree with Defendants that the denial of Culver's request for x-rays and to have photographs taken of his injury fails to state a claim.

decisions regarding his medical care. It may be that Cerullo's position at SCI-Mahanoy is purely administrative in nature, and that she was not directly involved in providing medical care to the inmate population, and that she reasonably relied upon the decisions made by the members of the prison's medical staff, however this cannot be decided on the pending motion to dismiss.

The claims raised against Defendant Stanitis, Food Service Manager, will also be allowed to proceed. Culver alleges that he was medically prescribed a pureed diet due to his jaw injury. He claims that he was denied the pureed diet which resulted in pain, weight loss and further injury to his jaw. Because complaints made by Culver to Defendant Stanitis were ignored, these claims survive Defendants' motion to dismiss.

      2. Failure to Protect Claim

Culver sets forth a failure to protect claim under the Eighth Amendment against Unit Manager Muick and Counselor Marhelko. Specifically, he asserts that these prison staff members employed an "adverse action" against another inmate (Inmate Wright) and implicated Culver as the reason behind the adverse action being taken against Wright. Culver alleges that Wright is housed on the same unit as he is, and that on the way to breakfast line the same day he was assaulted by Wright.

A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 828-29 (1994). Labeling an inmate a snitch may give rise to an Eighth Amendment violation if the prison official acted with deliberate indifference to a substantial risk of serious harm to the inmate. See Benefield v. McDowall, 241 F.3d 1267, 1270 (10th Cir. 2001).

To establish that prison officials violated the Eighth Amendment by failing to prevent

11

harm, an inmate must satisfy a two-pronged test that includes an objective and subjective element. Farmer, 511 U.S. at 828-29. An inmate must show (1) that the prison conditions posed a substantial risk of serious harm and (2) that prison officials were deliberately indifferent to the inmate's safety. Id. at 834. Prison officials exhibit deliberate indifference when they know of and disregard an excessive risk to inmate safety; mere negligence will not suffice. Id. at 835-37. To constitute deliberate indifference as defined in Farmer, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. However, an official who knows of a substantial risk to an inmate's health or safety but acts reasonably under the circumstances will not be held liable under the Eighth Amendment, even if the threatened harm results. Id. at 843.

In the instant case, Culver has alleged that Muick and Marhelko brought an adverse action against inmate Wright and exposed Culver as the reason behind the adverse action taken. Prison officials have an affirmative obligation to protect inmates from abuse at the hands of other inmates. To the extent Culver can show that Defendants made deliberate disclosures to inmate Wright with the intent to incite him to cause harm to Culver, the Court believes that Culver may state a failure to protect claim. It is possible Culver can show that Defendants created and fostered a risk of harm when they identified him to Wright as the person who caused the adverse action being taken against him, regardless of the type of adverse action taken by the prison. For these reasons, the motion to dismiss the claims against Defendants Muick and Marhelko will be denied.

    3.  Denial of Inmate Grievances and Appeals

To the extent Culver seeks to impose liability against any of the Corrections Defendants

based upon their handling of the grievances he filed concerning any of his claims against them, he fails to state a viable claim under § 1983. Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement for purposes of § 1983 liability. Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1988)(mere filing of a grievance is not enough to impute the actual knowledge necessary for personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006)(holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability). Accordingly, the motion to dismiss will be granted with respect to these claims.

      4.  Failure to file Certificate of Merit

The Corrections Defendants also seek the dismissal of Culver's medical and/or dental state malpractice claims due to his failure to file a certificate of merit as required under Pennsylvania Rule of Civil Procedure 1042.3. Defendant Specter previously moved to dismiss the state malpractice claims on the same basis. In opposing Defendants' argument, Culver raises the same arguments as he did in opposing Specter's motion. For the same reasons set forth in this Court's Memorandum and Order of August 15, 2012, the Court will permit Culver a period of thirty (30) days within which to file the required certificate of merit. If he fails to do so, his state law malpractice claims set forth against the Corrections Defendants will be dismissed.

    **B.**      **Motion to Dismiss by Medical Service Providers**

In the complaint Culver also names "Medical Service Providers to SCI-Mahanoy" as a

Defendant in this action. Presently pending before the Court is a motion to dismiss filed on behalf of Corizon, the entity that provides medical professionals to SCI-Mahanoy. (Doc. No. 44.) For the reasons that follow, the motion will be granted.

A private health care provider acting under color of state law, such as Corizon, can be liable under § 1983 for Eighth Amendment violations stemming from inadequate medical treatment of prisoners. See Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978); Thomas v. Zinkel, 155 F. Supp. 2d 408, 412 (E.D. Pa. 2001). Such liability cannot rest on respondeat superior alone, but instead must be based on some policy, practice, or custom within the institution that caused the injury. See Thomas, 155 F. Supp. 2d at 412. Moreover, mere identification of a policy or custom is not enough to establish liability; a plaintiff also must establish causation. In this regard, a plaintiff carries the burden of demonstrating a "plausible nexus" or "affirmative link" between the health care provider's custom or policy and the constitutional deprivation at issue. As such, there is no liability for the alleged misconduct of employees absent a link or nexus between the custom or policy and the employee's misconduct because such liability would be predicated upon the doctrine of respondeat superior. Monell, 436 U.S. at 691.

For the purposes of § 1983 analysis, a policy is made when a decision-maker with final authority to establish such a policy issues an official proclamation, policy or edict. See Andres v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990); Unterberg v. Corr. Med. Sys., Inc., 799 F. Supp. 490, 497-98 (E.D. Pa. 1992). A custom, on the other hand, "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Bielevicz v. Dubinon, 915 F.2d 845, 850

(3d Cir. 1990).  As a result, custom can be established by "proof of knowledge and acquiescence." Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3d Cir. 1989); Unterberg, 799 F.Supp. at 498. Under the Estelle test, deliberate indifference can be shown in the instant case for example, if there is an established policy or custom that caused Corizon to intentionally deny or delay access to necessary medical treatment for non-medical reasons, or if officials intentionally interfered with a course of treatment once prescribed.  See Estelle, 429 U.S. at 104-05; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

      In the instant case, Culver has not alleged the existence of any policy or custom attributable to Corizon with respect to his medical care that deprived him of his constitutional rights.  Rather, throughout the complaint it is evident that he seeks to impose liability upon Corizon merely because they employed individuals Culver maintains failed to provide him with adequate medical/dental care.   It is not until after Corizon filed the pending motion to dismiss that Culver attempts to foster a claim against Corizon by generally alleging in his opposition brief that Corizon "maintained a custom and/or practice to disregard his condition."  (Doc. No. 55 at 3.) However, it is clear in reviewing Culver's filing that he lacks any support for his general allegation and seeks to impose liability on Corizon solely as the entity responsible for providing health care to SCI-Mahanoy.  Accordingly, all claims set forth against Corizon will be dismissed in there entirety on the basis of failure to state a claim for which relief may be granted.  See Riddick v. Modeny, 250 F. App'x 482, 483-84 (3d Cir. 2007)(affirming district court's granting of private health care provider's motion to dismiss under Rule 12(b)(6), where court found "absent any allegation from which the court could infer Prison Health Services's direct involvement in the alleged deprivation of [Plaintiff's] constitutional rights, it was not liable on a

theory of respondeat superior."). An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRETT T. CULVER, | : | CIVIL NO. 1:CV-11-2205 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| JAMES SPECTER, et al., | : | |
| Defendants | : | |

## ORDER

**NOW, THIS 9th DAY OF October, 2012,** in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. The motion to dismiss filed by the Corrections Defendants (Doc. No. 32) is **granted in part and denied in part.** The motion is granted with respect to Plaintiff's claims regarding the denial of his grievances and appeals. The motion is denied in all other respects.

2. Within twenty (20) days from the date of this order, Plaintiff shall file the required certificate of merit with respect to his medical malpractice claims against the Corrections Defendants. Failure to do so will result in the dismissal of these claims without prejudice against said Defendants.

3. The motion to dismiss filed by Medical Service Providers (Doc. No. 44) is **granted**. All claims set forth against the Medical Service Provider Corizon are dismissed in their entirety.

S/Yvette Kane_____
YVETTE KANE, Chief Judge
Middle District of Pennsylvania